<u>**Not for publication**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                      :

FLOYD THOMAS,                      :

                          Plaintiff,        :        Civil Action No. 10-4485

      v.                            :

                                          :        **OPINION**

COMMISSIONER OF SOCIAL      :
SECURITY,                    :
                        Defendant.     :
_____ :

PISANO, District Judge:

Plaintiff Floyd Thomas ("<u>Plaintiff</u>") appeals the decision of the Commissioner of Social Security ("<u>Commissioner</u>") denying his request for Disability Insurance Benefits ("<u>DIB</u>"). The court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and decides this matter without oral argument. The Court finds that the record provides substantial evidence supporting the Commissioner's decision that Plaintiff is not disabled. Accordingly, the Court affirms the Commissioner's decision.

## I.     <u>BACKGROUND</u>

Plaintiff was born February 8, 1972, and at the time of this appeal was thirty-nine years old.  (Administrative Record ("<u>R</u>") 115).  He completed school through the tenth grade and worked as a forklift operator and sanitation worker.  (R. 121-124).  On February 16, 2002, Plaintiff suffered an injury at work and subsequently underwent a left leg, above-knee amputation.  (R. 120, 123).  He has not worked since December 31, 2006, the alleged onset date, due to pain in his left leg. (R. 27-28, 120).

**A.    Procedural History**

Plaintiff filed an application for DIB on March 6, 2007, alleging that he was disabled due to the amputation of his left leg.  (R. 42, 95).  The Social Security Administration denied his claim both initially and on reconsideration.  (R. 45, 50).  Upon Plaintiff's request, a hearing was held before an Administrative Law Judge (the "ALJ").  (R. 18, 53).  On July 24, 2009, the ALJ issued a written decision denying Plaintiff's claim.  (R. 6-17).  On July 16, 2010, the Appeals Council denied Plaintiff's request for a review of the hearing, and the ALJ's decision became the final decision of the Commissioner.  (R. 1-5).

Thereafter, Plaintiff filed a complaint in this Court alleging that the ALJ's decision was not based on substantial evidence.  Specifically, Plaintiff argues that the ALJ: (1) failed to accord adequate weight to the opinion of his treating physician; (2) failed to include all of his impairments in the hypothetical question posed to the vocational expert (the "VE"); (3) failed to take into account his non-exertional impairments in determining his residual functional capacity ("RFC"); (4) failed to consider the side effects of his medications; (5) erred in properly evaluating his subjective complaints; and (6) failed to follow the "slight abnormality" standard in finding that his back pain and herniated disks were non-severe.  Plaintiff asks this Court to remand the case for reconsideration.

**B.    Factual History**

Plaintiff has a tenth grade education and worked as a forklift operator for nine years and sanitation worker for six months.  (R. 121).  As a forklift operator, Plaintiff's job responsibilities included loading and unloading trucks, processing supply and work

orders, and driving a forklift.  (R. 121).  Plaintiff stated that he used machines, tools, and equipment and frequently lifted 50 pounds or more.  (R. 121).  As a sanitation worker, Plaintiff loaded trash into garbage trucks.  He was required to stand all day and lift 20 to 100 pounds.  (R. 26).  The VE testified that Plaintiff's job as a forklift operator was "heavy" in its exertional capacity and "semi-skilled"; and that his work as a sanitation worker was "very heavy" and "unskilled".  (R. 36).

On February 16, 2002, Plaintiff was involved in a motor vehicle accident at work and subsequently underwent a left leg, above-knee amputation.  (R. 21, 120).  The record is not clear on Plaintiff's work history since that date.  At the hearing on July 1, 2009, Plaintiff testified that, after losing his leg, he worked part-time for Wal-Mart for six months in 2005 and then collected worker's compensation payments.  (R. 24).  However, in a disability report dated March 20, 2007, Plaintiff reported that he worked as a janitor for Wal-Mart from September 2003 to December 2006.  (R. 120-121).  Plaintiff's earning statements also indicate that he worked for Wal-Mart from 2003 to 2006 and that his earnings posted were "regular" wages.  (R. 103).[1]

 Treatment notes from May 2006 by Dr. Coplin, M.D. indicate that Plaintiff suffered from phantom pain, swelling and severe low back pain, and that he would need to be out of work for several weeks.  (R. 188-189).  Dr. Coplin also stated that, although Plaintiff's skin integrity was good, there was sensitivity at the distal end of his stump and, at that time, Plaintiff was unable to wear his prosthetic.  (R. 188).  He prescribed Plaintiff Vicodin ES and Celebrex.  (R. 188-189).  In a report to the Hartford Life Insurance

---

[1]     Plaintiff's 'Detailed Earnings Query" indicates that from 2003 to 2006, his earnings were "regular earnings" (indicated by "AA" under "RE").  (R. 103).  Worker's compensation payments do not constitute "regular earnings."  *See* Program Operations Manual System (POMS) Section: RS 02510.026. (https://secure.ssa.gov/poms.nsf/lnx/0302510026).

Company, dated May 31, 2006, Dr. Coplin stated that Plaintiff suffered from phantom pain and low back pain.  (R. 185).  He also assessed that Plaintiff could stand for less than 2 hours a day, walk less than 2 hours, sit between four and eight hours, lift or carry less than two hours, reach/work overhead less than an hour, push or pull for less than an hour and drive for less than two hours.  (R. 186).  On June 28, 2006, Dr. Coplin stated that Plaintiff could return to work.  (R. 184).

On September 13, 2006, Dr. Coplin reported that Plaintiff was doing "fairly well" and could be evaluated for a new limb.  (R. 180).  On October 24, 2006, Dr. Coplin stated that Plaintiff was awaiting a prosthetic unit which would "improve his gait and station dramatically."  (R. 178).  He also reported that Plaintiff was ambulating freely and independently and could continue his work activity at Wal-Mart.  (R. 178).  In November 2006, Plaintiff was fitted for a new prosthetic leg.  (R. 127-133).  On December 5, 2006, Dr. Coplin reported that Plaintiff was ambulating well with his new prosthetic and that he was doing "fairly well" on his pain medication.  (R. 177).  Plaintiff was taking Valium and Vicodin ES during this time.  (R. 177-180).

On January 16, 2007, Dr. Coplin stated that Plaintiff was having phantom pain and anxiety related to his accident in 2002.  (R. 176).  However, in a letter to Diana Cortez, a vocational rehabilitation counselor, dated March 13, 2007, Dr. Coplin stated that Plaintiff's prognosis was "excellent" and that he did not have any restrictions with regard to work or daily activities.  (R. 174).  On August 7, 2007, Dr. Coplin reported that Plaintiff had severe lower back pain and significant tenderness in his left lower lumbar parsipinal muscles.  (R. 172).  He concluded that Plaintiff may have either a lumbar sprain or a herniated disk and prescribed him Duragesic, Neurontin, and Oxycontin for

his pain.  (R. 172).  He also stated that an MRI scan of the lumbar spine may be warranted to rule out a herniated disk.  (R. 172).

Upon filing his application for DIB, Plaintiff completed a function report questionnaire dated March 22, 2007.  (R. 134-141).  Plaintiff reported that, due to his leg, he can no longer run, dance, climb, jump or ride a motorcycle; he has trouble sleeping; he has difficulty lifting, squatting, bending, standing, kneeling and climbing stairs; and he cannot walk very far before needing to stop and rest.  (R. 135, 138).  He also stated that he uses crutches, a wheelchair and a cane, in addition to his artificial limb.  (R. 140).  Despite this, Plaintiff reported that he cooks meals for his family; cleans up around the house; helps his children with their homework; cleans his fish tank; shops and pays bills; fishes, watches movies and plays catch with his kids; goes to church on Sundays; and drives a car.  (R. 134-138).

Physical therapy notes from Healthsouth, dated September 6, 2007, indicate that Plaintiff was having difficulty with his balance and gait due to his new prosthetic; and that he thought his pain was a 7 on a scale of 0 to 10, with 10 being the worst.  (R. 201-203).  However, treatment notes from November 2007 through January 2008 show that Plaintiff's conditions improved once treatment was administered.  (R. 207-213).  On November 28, 2007, Plaintiff's physical therapist at Healthsouth reported that Plaintiff received a new socket for his prosthetic and that his balance was good.  (R. 211-212).  The notes also state that Plaintiff stopped taking Oxycontin for his pain.  (R. 211-212).  On December 5, 2007, December 27, 2007, and January 4, 2008, Plaintiff reported that he had no pain.  (R. 208-210).

On September 19, 2007, Dr. Robert Walsh, a state medical consultant, conducted a physical residual functional capacity assessment of Plaintiff.  (R. 193-200).  Dr. Walsh reported that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds.  (R. 194).  He also stated that, in an eight-hour workday, Plaintiff could stand and/or walk for six hours, sit for six hours and engage in unlimited pushing or pulling.  (R. 194).  With regard to postural limitations, Dr. Walsh reported that Plaintiff could balance, stoop and occasionally climb ramps and stairs; but that he could not kneel, crouch, crawl or climb ladders, ropes and scaffolds.  (R. 195).  Finally, Dr. Walsh stated that Plaintiff should avoid all exposure to extreme cold and hazards such as machinery and heights.  (R. 197).  He assessed that Plaintiff could perform light work.  (R. 198).

In a residual functional capacity assessment, dated January 12, 2009, Dr. Coplin reported that Plaintiff suffered from phantom pain, but that he showed a "good response" to pain management.  (R. 214).  He also stated that Plaintiff could only walk one city block without rest or severe pain; and that Plaintiff's pain and other symptoms were constantly severe enough to interfere with his attention and concentration at work.  (R. 215).  Dr. Coplin reported that Plaintiff could only sit for 30 minutes at one time, stand for 15 minutes, lift and carry 10 pounds and that he could never climb ladders.  (R. 215-216).  He concluded that Plaintiff would need a job that permits him to shift position at will from sitting, standing or walking, and that he would need to take unscheduled breaks during an eight hour work day.  (R. 216).

At the hearing on July 1, 2009, Plaintiff testified that he suffers from constant phantom pain in his left leg; and that the pain feels a "real heavy electric current" running through his stump to the bottom of his foot.  (R. 27).  He stated that he takes Roxicodone,

Oxycontin and Ambien daily, and that these drugs make him "relaxed and drowsy." (R. 27). With regard to functional limitations, Plaintiff testified that he could only sit for half an hour before his back starts hurting and his stump starts contracting. (R. 28). He also stated that he could only stand for 15 or 20 minutes at a time; and that, in an eight hour work day, he could sit for two or three hours and stand for three hours. (R. 28-29). Finally, Plaintiff reported that he can only walk about a block before his leg gives out or he feels too much pain. (R. 29-30).

Under questioning from the ALJ, Plaintiff stated that he cooks for himself and his family, cleans the house, helps his children with their homework and occasionally watches his grandson during the day. (R. 33). He stated, however, that it is hard for him to stand for long periods of time, and that he gets around the house primarily on crutches. (R. 34). When he is cooking in the kitchen, he uses a wheelchair. (R. 34). Plaintiff testified that he enjoys fishing, watching movies and playing catch with his children, but that has trouble doing these things. (R. 34-25). He also shops for food and household goods, but takes as long as he needs to do so. (R. 34).

## II. <u>LEGAL STANDARDS</u>

### A. *Establishing Disability*

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled for these purposes only if his physical and mental impairments are "of such severity that he is not only unable to do his previous

work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in any "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  The claimant bears the burden of establishing these first two requirements.  Failure to meet this burden automatically results in a denial of benefits.  *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  If claimant's impairment or combination of impairments meets or equals a listed impairment, he is presumed to be disabled and is automatically entitled to disability benefits.  *Id*.  If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e).  "Residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments."  *Id*. If the claimant is found to be capable of returning to his previous line of work, then he is

not "disabled" and not entitled to disability benefits. *Id*. If the claimant is unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the commissioner cannot satisfy this burden, the claimant will receive social security benefits. *Bowen*, 482 U.S. at 146-47 n. 5.

**B.     *Objective Medical Evidence***

Under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, a claimant is required to provide objective medical evidence in order to prove his disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of [42 U.S.C.] § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a Plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). A claimant must provide medical findings that show that he has a medically determinable impairment. *See id.*; *see also* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment…"); 42 U.S.C. § 1382c(a)(3)(A) (same).

Furthermore, a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [his] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## III.   <u>STANDARD OF REVIEW</u>

The district court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g); *Williams*, 970 F.2d at 1182. Substantial evidence means more than a "mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The inquiry is not whether the reviewing court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will not be "substantial."  For example,

'[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered

by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.' " *Schonewolf v. Callahan*, 972 F.Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F.Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Access to the commissioner's reasoning is essential to meaningful review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rationale.

*Gober v. Matthews*, 574, F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1183.

IV.    **DISCUSSION**

A.     *The ALJ's Decision*

After reviewing all of the evidence in the record, the ALJ determined that Plaintiff was not disabled and denied his claim.  (R. 6).  The ALJ arrived at his decision by following the five-step sequential analysis required under 20 C.F.R. § 404.1520.

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 31, 2006, the alleged onset date.  (R. 11).  At step two, he determined that Plaintiff's left leg, above-knee amputation constituted a severe impairment.  (R. 11).  However, the ALJ did not find that Plaintiff's back pain was severe.  He noted that, in 2006, Plaintiff suffered from phantom pain, swelling and severe low back pain and would need to be out of work for several weeks; but that subsequent treatment notes from Dr. Coplin indicate that Plaintiff was doing fairly well and could return to work.  (R. 11).

The ALJ also considered Dr. Coplin's March 2007 letter to Diana Cortez, in which he stated that Plaintiff's prognosis was excellent and that Plaintiff was not under any restrictions with regard to work or daily activities.  (R. 12).  The ALJ noted that, in August 2007, Plaintiff complained of having severe lower back pain; and that Dr. Coplin's impression was lumbar strain or a herniated disc.  (R. 12).  The ALJ also found that, in September 2007, Plaintiff reported that his pain was a 7 on a scale of 0 to 10; but that, in December 2007 and January 2008, Plaintiff reported that he had no pain and had stopped taking Oxycontin.  (R. 12).  Finally, the ALJ cited the residual functional capacity assessments of Dr. Walsh and Dr. Coplin.  (R. 12).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P. (R. 12). Prior to reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> Lift and carry up [to] twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight hour workday, and sit for six hours in an eight hour workday and could engage in unlimited push/pull activity, but could only occasionally climb stairs, balance and stoop and could not climb ladders or scaffolds, kneel, crouch or crawl and he needed to avoid exposure to extreme cold temperatures as well as hazardous machinery and unprotected heights.

(R. 13). In making this determination, the ALJ considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence. The ALJ also considered opinion evidence.

In considering Plaintiff's symptoms, the ALJ followed a two-step process in which he first considered "whether there is an underlying medically determinable physical or mental impairment… that could reasonably be expected to produce the claimant's pain." (R. 13). Second, he evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work related activities." (R. 13). As the ALJ noted, "whenever statements about the intensity, persistence, or limiting effects of [Plaintiff's] symptoms are not substantiated by the objective medical evidence, the [ALJ] must make a finding on the credibility of the statements." (R. 13).

The ALJ determined that, although Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. (R. 13).

Specifically, the ALJ found that Plaintiff's alleged limitations appeared exaggerated compared to the objective medical evidence; and that they are inconsistent with the much higher level of daily activities indicated.  (R. 13).  He noted that, in March 2007, Dr. Coplin stated that Plaintiff's prognosis was excellent and that he was not under any restrictions with regard to work or daily activities.  (R. 14).  He also found that notes from Healthsouth dated 2007 and 2008 indicate that Plaintiff's balance had dramatically improved and that his muscle strength in his lower extremity had increased.  (R. 14).  It was also noted that in December 2007 and January 2008, Plaintiff stopped taking his pain medication and reported no pain.  (R. 14).

In his decision, the ALJ did not give significant weight to Dr. Coplin's January 2009 RFC assessment because it contradicted his previous statements and Plaintiff's daily activities.  (R. 14).  For instance, in 2009, Dr. Coplin reported that Plaintiff needed a job that permitted him to shift positions at will and take unscheduled breaks during an eight-hour workday.  (R. 14).  The ALJ found, however, that Dr. Coplin's report contradicted his statements in 2007 that Plaintiff was not under any restrictions with regard to work or daily activities; and that Plaintiff could attend a full-time training program.  (R. 14).  The ALJ also found Dr. Coplin's assessment contradictory to Plaintiff's testimony that he performs normal daily activities such as cooking, cleaning, shopping, fishing, playing catch and driving.  (R. 14).

The ALJ also called into question the overall credibility of Plaintiff's testimony due to discrepancies in the evidence regarding his work history.  (R. 14).  For instance, Plaintiff testified that he stopped working full time in 2001 and that he only worked part-time for Wal-Mart for about six months in 2005 before collecting Worker's

Compensation payments.  (R. 14).  However, the ALJ noted that treatment notes from Dr. Coplin indicate that Plaintiff worked at Wal-Mart through December 2006.  (R. 14).  The ALJ also noted that Plaintiff's detailed earnings statements show that he started working at Wal-Mart in 2003 and that the monies posted were actual earnings.  (R. 14).  The ALJ concluded that there was insufficient evidence to find that Plaintiff had functional limitations to such a disabling degree as to preclude the performance of all work activity on a sustained basis.  (R. 15).

At step four, the ALJ determined that Plaintiff could not return to his past relevant work as a forklift operator, sanitation worker or janitor.  (R. 15).  However, at step five, the ALJ held that Plaintiff could perform other work that exists in significant numbers in the national economy.  (R. 15).  In making this determination, the ALJ asked a VE whether a significant number of jobs existed for an individual with Plaintiff's age, education, work experience and residual functional capacity.  (R. 16).  The VE reported that, given all of these factors, the individual would be able to perform the jobs of cleaner/housekeeper, assembler and bagger.  (R. 16).  The VE also stated that, if such an individual had to sit, stand or walk at will, he could perform the jobs of assembler and bagger, but not cleaner/housekeeper.   (R. 16).   Based on this testimony, the ALJ concluded that Plaintiff would be capable of making a successful adjustment to other work and, therefore, was not disabled.  (R. 16).

## B.    *Plaintiff's Arguments*

Plaintiff raises six objections to the ALJ's conclusion that he is not disabled. Specifically, Plaintiff argues that the ALJ: (1) failed to accord adequate weight to the opinion of his treating physician; (2) failed to include all of his impairments in the

hypothetical question posed to the VE; (3) failed to take into account his non-exertional impairments in determining his RFC; (4) failed to consider the side effects of his medications; (5) erred in properly evaluating his subjective complaints; and (6) failed to follow the "slight abnormality" standard in finding that his back pain was not severe.

1.    The ALJ accorded adequate weight to the opinion of Plaintiff's treating physician.

Plaintiff argues that the ALJ failed to accord adequate weight to the opinion of his treating physician, Dr. Coplin.  Specifically, he contends that, because the ALJ did not point to any other doctors who contradicted Dr. Coplin, his January 2009 RFC Assessment should have received greater weight.  He argues that the ALJ should not be allowed to use Dr. Coplin's own treatment notes from a period when Plaintiff was doing well to contradict his opinion.

The Third Circuit has held that "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' "  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  An ALJ "may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales,* 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429)).  When an ALJ is confronted with contradictory medical evidence, he may choose whom to credit, but must explain the reasoning behind his conclusions.  *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d. Cir. 2001).

In the present case, the ALJ found that Dr. Coplin's January 2009 RFC Assessment was contradicted by his prior treatment records, which showed improvement in Plaintiff's condition.  In particular, the ALJ noted that Dr. Coplin's January 2009 RFC Assessment was contradictory to his statement to Ms Cortez, on March 13, 2007, that Plaintiff was "not under any restrictions with regard to work or daily activities" and that Plaintiff was able to attend a full time training program.  Physical therapy records from 2007 and 2008 from Healthsouth show continued improvement in Plaintiff's condition. The initial physical therapy notes, dated September 6, 2007, indicate that Plaintiff was having difficulty with his balance and gait due to his new prosthetic; and that he thought his pain was a 7 on a scale of 0 to 10, with 10 being the worst.  However, subsequent treatment notes show that Plaintiff's condition improved once treatment was administered.   On November 28, 2007, Plaintiff's physical therapist at Healthsouth reported that Plaintiff received a new socket for his prosthetic and that his balance was good.  The notes also state that Plaintiff had stopped taking Oxycontin for his pain. Plaintiff reported that he had no pain in December of 2007 and January of 2008.  The ALJ also noted that Dr. Coplin's January 2009 RFC Assessment was contradicted by Plaintiff's own statement in his Function Report, dated March 22, 2007, that he performs normal daily activities.  Plaintiff reported that he had no problems with personal care; that he takes care of his pet fish and cleans their 55 gallon tank every 2 weeks; that he feeds and cleans up after his children and sometimes his grandson; that he makes his own breakfast; that he performs the cleaning, laundry, household repairs, ironing and mowing around the house; he plays catch with the kids, throws the football around and goes fishing.  This record evidence contradicts Dr. Coplin's 2009 RFC Assessment and the

ALJ was not required to give that opinion controlling weight. *See Plummer*, 186 F.3d at 429 ("An ALJ ... may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). The ALJ complied with his obligation to consider Dr. Coplin's January 2009 RFC Assessment, and the ALJ explained his reasons for giving that opinion little weight. *Burnett v. Commissioner,* 220 F.3d 112, 122 (3d Cir. 2000).

Plaintiff also complains that the ALJ failed to analyze Dr. Coplin's medical records covering the time period during which Plaintiff was recovering from his amputation. However, the treatment records regarding this period of time are not contained in the administrative record. When a claimant "seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (citing the sixth sentence of 42 U.S.C. § 405(g)). Plaintiff has not argued that these medical records are new, material or that there is good cause why they were not previously presented to the ALJ; therefore, the Court will not consider this evidence.

Finally, Plaintiff complains that the ALJ failed to consider Dr. Coplin's May 2006 report to the Hartford Life Insurance Company. Plaintiff argues that this report corroborates Dr. Coplin's 2009 RFC assessment and, thus, should not have been overlooked. The Third Circuit has explained that, although an ALJ is not expected "to make reference to every relevant treatment note . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli* 247 F.3d at 41. In that

case, the ALJ had described 4 diagnostic tests and 5 treatment notes where the record contained over 115 pages of relevant and probative treatment notes.  The Court then explained that "[t]he disparity between the actual record and the ALJ's sparse synopsis of it makes it impossible for us to review the ALJ's decision, for we cannot tell if significant probative evidence was not credited or simply ignored."  *Id*. at 42 (internal quotation omitted).

Dr. Coplin's May 2006 Report to the Harford Life Insurance Company stated that Plaintiff suffered from phantom pain and low back pain.  He assessed that Plaintiff could stand for less than 2 hours a day, walk less than 2 hours, sit between 4 and 8 hours, lift or carry for less than 2 hours, reach/work overhead less than 1 hour, push or pull for less than 1 hour and drive for less than 3 hours.  Although this report contains somewhat similar limitations to those in Dr. Coplin's 2009 RFC Assessment, the Court also notes that it is dated prior to the 2007 and 2008 treatment notes from both Dr. Coplin and Healthsouth, which show considerable progress in Plaintiff's condition.  The Court finds that, although it would have been desirable for the ALJ to consider this report, it is not impossible for the Court to review the ALJ's decision because the medical record indicates that Plaintiff's condition improved subsequent to the report being issued.

2.      The ALJ included all of Plaintiff's credibly established limitations in the hypothetical question to the vocational expert.

Plaintiff argues that the ALJ erred by failing to include all of his limitations in the hypothetical question posed to the VE.  He alleges that there are five such limitations: (1) his inability to maintain attention and concentration due to pain; (2) his inability to sit for more than 30 minutes at a time and stand for more than 15 minutes at a time; (3) the limitation that, in an 8 hour work day, he can stand for less than 2 hours a day and sit

between 4 and 8 hours; (4) his limitations with regard to lifting, reaching and working overhead; and (5) his inability to wear his prosthetic for a significant amount of time.

The Third Circuit has stated that "a vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question[s] accurately portray the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d. Cir. 1984). Therefore, sufficient hypothetical questions will reflect "all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (internal citations omitted) (emphasis in original). Additionally, the ALJ must be given an opportunity to evaluate those limitations "as contained in the record." *Id*. (quoting *Podedworny*, 745 F.2d at 218).

Plaintiff complains that the ALJ's hypothetical did not include Plaintiff's inability to maintain attention and concentration due to pain; his inability to sit for more than 30 minutes at a time and stand for more than 15 minutes at a time; his limitation that, in an 8 hour work day, he can stand for less than 2 hours a day and sit between 4 and 8 hours; and his limitations with regard to lifting, reaching and working overhead. However, as noted above, sufficient hypothetical questions will reflect "all of a claimant's *credibly established limitations*." *Rutherford*, 399 F.3d at 554 (internal citations omitted) (emphasis in original). Because the ALJ gave little weight to Dr. Coplin's 2009 RFC Assessment and Plaintiff's hearing testimony, which are the sources of these limitations, the Court finds that the ALJ did not err by failing to include them in the hypothetical question to the VE.

Plaintiff correctly points out that the ALJ did not include Plaintiff's inability to wear his prosthetic for a significant amount of time in the hypothetical posed to the VE. However, the Court notes that this limitation is only discussed once in the administrative record, by Dr. Coplin on May 22, 2006. This was prior to Plaintiff's receipt of a new prosthetic on November 22, 2006, and no similar complaints appear in the record thereafter. Accordingly, the Court finds that the ALJ did not err by failing to include this limitation in the hypothetical question.

3.     The ALJ adequately addressed Plaintiff's non-exertional impairments in determining Plaintiff's RFC.

Plaintiff also argues that the ALJ erred by failing to account for his non-exertional limitations in determining his RFC. As an initial matter, the Court notes that the regulations define a claimant's "exertional capacity" as "an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting carrying, pushing and pulling." SSR 96-8P. On the other hand, a claimant's "non-exertional capacity considers all work-related limitations that do not depend on an individual's physical strength." *Id*. Plaintiff claims that the ALJ failed to consider his ability to sit, stand and stay in one position. Therefore, it appears that Plaintiff intended to argue that the ALJ erred by failing to account for his exertional capacity, not his non-exertional capacity.

The ALJ found that Plaintiff had an RFC that allowed him to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday and could engage in unlimited push/pull activity, but could only occasionally climb stairs, balance and stoop and could not climb ladders or scaffolds, kneel, crouch or crawl and he needed to avoid

exposure to extreme cold temperatures as well as hazardous machinery and unprotected heights.  In making this RFC determination, the Court finds that the ALJ adequately considered each of seven strength demands identified in the regulations.

Plaintiff claims that he suffers from significant pain, and contends that the ALJ failed to consider how this pain affects his ability to sit, stand and stay in one position.  However, the regulations explain that "symptoms, including pain, are not intrinsically exertional or non-exertional."  *Id*.   Instead, "[s]ymptoms often affect the capacity to perform one of the seven strength demands."  *Id*.   Therefore, Plaintiff appears to be arguing that the ALJ failed to properly consider his complaints about pain.  The Court considers this argument in Section 5 below.

       4.      <u>The ALJ properly evaluated the side effects of Plaintiff's medications</u>.

Plaintiff also contends that the ALJ did not properly consider the side effects of his prescription medication.  It is unclear whether Plaintiff is arguing that the ALJ did not properly consider Plaintiff's complaints about the side effects of his medication, or whether the ALJ failed to consider the medical records with regard to the side effects of his medication.  Plaintiff points out that he testified that he takes Roxicodone, Oxycontin and Ambien on a daily basis, and that these drugs make him "relaxed and drowsy."  However, Plaintiff also states that Dr. Coplin reported these side effects in his treatment notes, in his 2006 Report to Hartford Life Insurance Company and in his January 2009 RFC Assessment.  The Court considers Plaintiff's argument that the ALJ did not properly consider his complaints about the side effects of his medication in Section 5 below.

To the extent that Plaintiff argues that the ALJ failed to properly consider the objective medical evidence with regard to the side effects of Plaintiff's prescription

medication, the Court notes that the medical records do not support the fact that Plaintiff's medication caused him problems.  The Court finds no support for Plaintiff's statement that Dr. Coplin reported these side effects in any of his treatment notes, in his 2006 Report to Hartford Life Insurance Company or in his January 2009 RFC Assessment.  In fact, Dr. Coplin's medical report, dated December 5, 2006, stated that Plaintiff was "doing fairly well" on Valium and Vicodin.  Accordingly, the Court finds that the ALJ properly evaluated the medical evidence with regard to Plaintiff's medications.

      5.     The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of pain.  As discussed above, a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [his] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."  20 C.F.R. § 404.1529(b); SSR 96-7; *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony).  Once an underlying physical impairment has been shown, the ALJ must next evaluate the intensity and persistence of the claimant's symptoms so that the ALJ can determine how those symptoms limit his capacity for work.  20 C.F.R. § 404.1529(c)(1); SSR 96-7.  In evaluating the intensity and persistence of those symptoms, an ALJ should consider all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, and statements from the claimant, his treating or non-treating source, or other persons.  *Id*.  When an individual's alleged symptoms

suggest a greater level of severity of impairment than can be supported by the objective medical evidence alone, an ALJ should consider the following factors to assess the credibility of an individual's statements: (i) the extent of the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7.

In this case, the ALJ determined that Plaintiff had a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. The ALJ found that Plaintiff has some subjective limitations, but not of the intensity, frequency or duration alleged. Overall, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms appeared exaggerated compared to the objective medical evidence in the record and were inconsistent with the much higher level of daily activities indicated.

First, Plaintiff contends that the ALJ did not adequately consider the regulatory factors required in evaluating subjective complaints of pain. The ALJ considered Plaintiff's daily activities in detail. He noted that Plaintiff does the cleaning, laundry, household repairs, ironing, mowing and cleans the car. Plaintiff prepares all the meals for his family; helps the children with their homework; plays catch or football with them and enjoys fishing and watching movies. Plaintiff also feeds the family's pet fish and

cleans the 55 gallon fish tank every 2 weeks.  The ALJ found that these daily activities were inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.   The ALJ also considered the type, dosage, effectiveness and side effects of Plaintiff's medication.  Plaintiff testified that he takes Roxycodone as needed, Oxycontin three times daily and Ambien to go to sleep at night.  The ALJ noted that Plaintiff complained about the Oxycontin making him feel drowsy.  However, the ALJ also pointed out that the Healthsouth records indicated that Plaintiff had been able to stop taking pain medication and that he experienced no pain on December 5, 2007, December 27, 2007, and January 4, 2008.   Finally, the ALJ considered the effect of treatment other than medication for Plaintiff's symptoms.  Plaintiff's physical therapy treatment notes show that Plaintiff initially reported that his pain was a 7 out of 10 and that he had difficulty with balance and gait after receiving a new prosthetic unit.  However, subsequent treatments from Healthsouth showed that, by November of 2007, Plaintiff's balance improved dramatically and that his lower extremity muscle strength had also improved.  In addition, in January of 2009, Dr. Coplin reported that Plaintiff had a good response to pain management.

Although the ALJ did not consider the other regulatory factors when evaluating Plaintiff's subjective complaints of pain, the Court notes that Plaintiff fails to identify how any of them are relevant in this case.  The record does not reveal any factors that precipitate or aggravate Plaintiff's symptoms that were not taken into account, any other measures used to relieve pain or any other factors concerning functional limitations and restrictions due to his pain.   Therefore, the Court finds that the ALJ followed the

mandated procedures for evaluating Plaintiff's pain and his decision was supported by substantial evidence.

Plaintiff also contends that the ALJ's credibility determination concerning Plaintiff's subjective complaints was not based on substantial evidence.  If an ALJ concludes that testimony is not credible, that ALJ must indicate the basis for that conclusion in his decision.  *Cotter v. Harris,* 642 F.2d 700, 705-706 (3d Cir. 1981).  An ALJ is not obliged to accept the credibility of subjective evidence without question. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979).  An ALJ has the discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  *Brown v. Schweiker,* 562 F.Supp. 284, 287 (E.D.Pa. 1983) (quoting *Bolton v. Secretary of HHS,* 504 F.Supp. 288 (E.D.N.Y.1980)).

In this case, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms appeared exaggerated compared to the objective medical evidence in the record and were inconsistent with the much higher level of daily activities indicated.  The ALJ made specific findings with respect to his decision to partially discredit Plaintiff's statements regarding his impairments and their impact on his ability to work.  For example, the ALJ pointed out that, although Plaintiff testified that he was in constant pain, treatment notes from Healthsouth indicate that Plaintiff reported no pain on December 5, 2007, December 27, 2007, and January 4, 2007, or anytime thereafter.  In addition, the ALJ noted that, even though Plaintiff testified in 2009 that he could not sit for more than 2 hours, stand for a total of 3 hours out of an 8 hour workday and walk for no more than 1 city block, Dr. Coplin stated that

Plaintiff was not under any restrictions with regard to work or daily activities in March of 2007 and Healthsouth treatment notes from November 2007 show that Plaintiff's balance had dramatically improved and that his muscle strength had increased.  The ALJ also considered Plaintiff's substantial daily activities and found them inconsistent with his claims.  Based on the foregoing, the Court finds that the ALJ's conclusion concerning Plaintiff's credibility regarding the intensity, persistence and limiting effect of his impairment was reasonable and is supported by substantial evidence.

The ALJ also found that certain discrepancies in the record raised general doubt as to the overall credibility of Plaintiff's testimony.  Again, the ALJ made specific findings with respect to his decision to partially discredit Plaintiff's general credibility. Plaintiff testified that he had worked part-time at WalMart for about 6 months in 2005 and that the monies posted on his earnings record for 2004, 2005 and 2006 from WalMart were from worker's compensation payments, not actual earnings.  The ALJ noted, however, that this testimony was in direct conflict with treatment notes from Dr. Coplin, which indicated that Plaintiff worked at WalMart through December 2006, and Plaintiff's detailed earnings statements, which show that Plaintiff began working at WalMart in 2003 and that his earnings from WalMart in 2004, 2005 and 2006 were actual earnings, not worker's compensation earnings.  Based on the foregoing, the Court finds that the ALJ's conclusion concerning Plaintiff's overall credibility was reasonable and is supported by substantial evidence.

> 6.    Substantial evidence supports the ALJ's determination that Plaintiff's back pain was not severe.

Plaintiff argues that the ALJ improperly determined that Plaintiff's back pain was not a severe medical impairment.  Specifically, Plaintiff complains that the ALJ failed to

explain why Plaintiff's back pain was not severe.  Plaintiff points out that the ALJ did not discuss how Plaintiff's back pain impacted his ability to sit, his ability to stand and his ability to stay in one position for a long period of time.

As stated above, at step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  "According to the Commissioner's regulations, 'an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.' " *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003) (quoting *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996)). *See also* 20 C.F.R. § 404.1520(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs" and include: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying and handling; seeing, hearing and speaking; understanding, carrying out and remembering simple instructions; using judgment; responding to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims."  *Newell,* 347 F.3d at 546.  Thus, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.' " *Id.*  "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* at 546-47 (*citing Smolen,* 80 F.3d

at 1290).   Reasonable doubts at the step two stage must be resolved in favor of the claimant.  *Id.* at 547.

The Court finds that the ALJ's determination that Plaintiff's back pain was not a severe medical impairment is supported by substantial evidence.  Plaintiff's low back pain was first mentioned by Dr. Coplin in May of 2006.  In August of 2007, Dr. Coplin noted that Plaintiff complained of severe lower back pain and made an initial determination that Plaintiff suffered from either a lumbar sprain or a herniated disk.  He recommended that Plaintiff may want to have an MRI scan of his lumbar spine to rule out a herniated disk. Since that time, the medical record contains no objective medical evidence supporting a claim of back pain.  There is no record of an MRI having been performed[2] or any complaints about back pain after August of 2007.  Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's back pain did not impact his ability to perform basic work functions.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying benefits for Plaintiff.  An appropriate order follows.


Dated: August 31, 2011

<u>s/ Joel A. Pisano</u>
JOEL A. PISANO U.S.D.J.

---

[2]      Plaintiff claims that an MRI confirmed the existence of a herniated disc in Plaintiff's lower back. However, the Court was unable to locate MRI results in the administrative record.